**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____

|  | : |
| INTERNATIONAL BROTHERHOOD OF | : |
| TEAMSTERS, LOCAL 701, | : |
|  | : |
| Plaintiff, | : |
|  | : |
| v. | : |
|  | : |
| CBF TRUCKING, INC., | : |
|  | : |
| Defendant. | : |

Civ. No. 09-5525
**OPINION & ORDER**

_____

THOMPSON, U.S.D.J.

        This matter comes before the Court upon Plaintiff International Brotherhood for

Teamsters, Local 701's ("Local 701") Motion to Dismiss Defendant CBF Trucking, Inc.'s

("CBF") Counterclaim and to Confirm the Arbitration Award [docket # 8], and upon CBF's

Cross-Motion to Vacate or Modify the Arbitration Award [docket # 9].  The Court has decided

the motions upon the parties' written submissions,  without oral argument, pursuant to Fed. R.

Civ. P. 78(b).  For the reasons given below, Local 701's Motion to Dismiss CBF's Counterclaim

and to Confirm the Arbitration Award is granted, and CBF's Motion to Vacate or Modify the

Arbitration Award is denied.

**I.      Background**

        Local 701 and CBF are parties to a collective bargaining agreement ("CBA") effective

January 1, 2006 through December 31, 2011.  (Arbitration Award 1.)  CBF is a privately held

company which contracts with the United States Postal Service to transport mail between

facilities.  A dispute between the parties arose after CBF terminated union member Michael

Mickens ("Mickens") for failure to complete one of his scheduled mail runs, Trip 816, on the evening of November 25, 2008.

At a meeting between the parties on December 16, 2008, Mickens denied any wrongdoing and insisted he had completed all of his assigned runs. (*Id.* at 12.) Thereafter, CBF obtained documentation confirming that Mickens did not make the scheduled mail run and consequently issued a termination letter on December 23, 2008. (*Id.* at 13.) The union submitted a grievance over the termination, which was denied by CBF. (*Id.* at 2.) The Union then filed a demand for arbitration consistent with Article 6 of the CBA. (*Id.*)

At arbitration, Mickens claimed that Security Guard Bratton ("Bratton"), whom he believed to be transmitting directions from the dispatcher, informed him that he did not need to complete the run. (*Id.* at 18-20.) Bratton could not confirm that he had told Mickens that he did not need to complete the trip in question. However, he confirmed Mickens's general testimony that security guards sometimes relay communications from dispatch to truck drivers and that it was "possible" he gave Mickens the alleged instructions. (*Id.* at 18-19.) Noting Bratton's testimony and the fact that Mickens went on to complete his next scheduled run, the arbitrator found Mickens's testimony credible. (*Id.* at 18-20.) The arbitrator further found that CBF failed to submit substantial, non-hearsay evidence to refute Mickens's testimony and thus did not carry its burden to establish just cause for the termination. (*Id.* at 20.) On September 9, 2009, the arbitrator issued an opinion and award granting Mickens reinstatement to his former position along with full back pay and benefits from the date of his termination to the date of his reinstatement. (*Id.* at 21.)

On October 23, 2009, Local 701 filed a complaint pursuant to Section 301 of the Labor Management Relations Act, 29 U.S.C § 185, and the Federal Arbitration Act ("FAA"), 9 U.S.C.

§ 1 *et. seq.*, seeking to enforce the arbitration award ordering reinstatement.  On December 8, 2009, CBF filed a counterclaim to vacate or, in the alternative, to modify the award.  Local 701 then filed a motion to dismiss CBF's counterclaim and to confirm the arbitration award on March 12, 2010.  On March 26, 2010, CBF filed a cross-motion to vacate or modify the arbitration award.

## II.    Analysis

 "In a proceeding to confirm or vacate an arbitration award, a court's review is exceedingly narrow." *Eichleay Corp. v. International Ass'n of Bridge*, 944 F.2d 1047, 1055-56 (3d Cir. 1991).  The Third Circuit has repeatedly stressed that there is a strong presumption in favor of confirming arbitration awards.  *See Major League Umpires Ass'n v. Am. League of Prof'l Baseball Clubs*, 357 F.3d 272, 280 (3d Cir. 2004); *see also Dluhos v. Strasburg*, 321 F.3d 365, 370 (3d Cir. 2003).

The FAA sets out the exclusive grounds under which a court can vacate or modify an arbitration award.  *Hall Street Associates, L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 584 (2008).  The FAA allows a court to vacate an arbitration award only where the award was procured by corruption, fraud, or undue means, where there was evident partiality or corruption on the part of the arbitrators, where the arbitrators were guilty of misconduct, or where the arbitrators exceeded their powers or so imperfectly executed them that a mutual, final, and definite award was not made.  9 U.S.C. § 10(a).  CBF makes several arguments for why the Court must vacate the award: (1) because it was "procured by corruption, fraud, or undue means," (2) because the arbitrator acted with "manifest disregard for the law," and (3) because the award violates public policy.

### A.    *Award Procured by Fraud or Undue Means*

In order to vacate an award on the basis of fraud, the party seeking to vacate must: 1) establish the existence of the fraud by clear and convincing evidence; 2) show that the fraud could not have been discoverable upon the exercise of due diligence prior to or during the arbitration; and 3) demonstrate that the fraud materially related to an issue in the arbitration. *Bapu,* 2010 WL at *5. Courts have applied this same three-part test to claims of undue means. *See, e.g.*, *A.G. Edwards & Sons, Inc. v. McCollough*, 967 F.2d 1401, 1404 (9th Cir. 1992). Therefore, the Court's analysis of CBF's fraud claim applies with equal force to CBF's undue means claim.

CBF alleges that the Mickens fraudulently withheld critical evidence directly related to his termination in an effort to mislead and defraud the arbitrator.[1] (Mem. Opp'n Pl.'s Mot. Dismiss 2.) The evidence at issue is one or more tape recordings, which CBF contends Mickens secretly made, of meetings between Mickens and CBF prior to the arbitration. During these meetings, Mickens repeatedly insisted that he had completed all trips, including Trip 816. At the arbitration hearing, however, Mickens conceded that he had not completed the run because he had been following what he believed to be official instructions from Bratton. (*Id.*) CBF argues that these tape recordings would have called Mickens's credibility into question and led the arbitrator to a different result. (*Id.* at 16.)

The Court first notes that Mickens' failure to provide CBF with the tape recordings until after the arbitration award had been finalized is fraudulent or undue conduct that could be grounds for vacating the arbitration award. Willful destruction or withholding of evidence constitutes fraud under the FAA. *Trans Chemical Ltd. v. China Nat. Machinery Import and Export Corp.*, 161 F.3d 314, 319 (5th Cir. 1998). Withholding the tapes denied the arbitrator

---

[1] The evidence came to light in a subsequent civil suit brought by Mickens against CBF.

relevant evidence that may have clarified CBF's and Mickens' positions regarding what happened on the night of November 25, 2008 and that could have made it easier for the arbitrator to determine whether CBF had good cause to fire Mickens after the December 16, 2008 meeting.

Despite the Court's concerns about Mickens's behavior, it will not vacate the arbitration award on these grounds because it appears that Mickens's failure to disclose the tape recordings did not deny CBF a fair proceeding. The Third Circuit has found that an arbitrator's failure to hear relevant evidence is insufficient grounds on which to vacate an arbitration award where the party is not prejudiced or denied a fair hearing. *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 557 (3d Cir. 2009); *accord PaineWebber Group, Inc. v. Zinsmeyer Trusts*, 187 F.3d 988, 994 (6th Cir. 1999) (arbitration award may only be vacated if there is a causal relation between the undue means and the arbitration award). Mickens's failure to disclose the tape recordings must be viewed in light of the other evidence in the case. *See Newark Stereotypers' Union No. 18 v. Newark Morning Ledger Co.*, 397 F.2d 594, 599 (3d Cir. 1968) (holding that arbitration award would not be vacated when suppressed evidence was not decisive or seriously harmful in light of other evidence in the case).

Courts that have considered the fairness of an arbitration hearing due to allegations of fraudulent behavior have focused on the ability of the other party to discover and reveal the fraudulent behavior at the time of the arbitration hearing. *Karppinen v. Karl Kiefer Mach. Co.*, 187 F.2d 32, 35 (2d Cir. 1951) (if perjury was discoverable at arbitration hearing, fraud should have been invoked as a defense at that time); *Biotronik Mess-Und Therapiegeraete GmbH & Co. v. Medford Med. Instrument Co.*, 415 F. Supp. 133, 138 (D.N.J. 1976) ("the focus under § 10(a) is upon whether the protesting party had an opportunity to discover and reveal the purported fraud at the arbitration hearing").

The recordings demonstrate that Mickens changed his story between the meeting and the arbitration hearing.  The Court believes that given Mickens's inconsistent statements and failure to provide CBF with an explanation for his actions prior to his termination, the arbitrator could, and possibly should, have found Mickens's explanation as to why he did not complete the assigned run to be self-serving and unreliable.  Apart from the explanation given by Mickens at the hearing, it would appear that CBF had good cause to terminate Mickens.  However, it is the arbitrator's role to assess a witness's credibility and the Court may not overturn an award simply because it may have reached a different determination.  *N. Am. Publ'ns, Inc. Daily Racing Form Div. v. Newark Typographical Union, Local 103*, 918 F.2d 21, 24 (3d Cir. 1990) (court may not overturn arbitration award for factual error, disagreement with arbitrator's assessment of witness credibility, or weight given to testimony).

The arbitrator knew of Mickens's inconsistent statements and acknowledged them in his opinion.  In his discussion and findings, the arbitrator recounts the events prior to the arbitration and states that at one of the meetings prior to the arbitration "[Mickens] insisted that he pulled 'all of his trips that day, did not miss one,' including his 815/816 trips."  (Arbitration Award 12-13).  Given that Mickens's credibility had already been called into question, it is unlikely that disclosure of the tape recordings would have led the arbitrator to a different outcome.

In addition, while CBF had no reason to know of the tape recordings at the time of the arbitration hearing, they clearly were aware of Mickens's inconsistent statements.  If CBF believed Mickens perjured himself at the arbitration, it had the ability to cross-examine him or present witnesses that could disprove or contradict his statements.  According to the arbitration award, the arbitrator gave both parties every opportunity to present evidence and make arguments and that the record was closed on August 19, 2009 only upon the parties' election not

to file post-hearing briefs.  (Arbitration Award 2.)  Thus, CBF has not shown that withholding of

the tape recording resulted in an arbitration that was unfair as a whole or that the result was

procured as the result of Mickens's alleged fraudulent conduct.

> **B.     *Manifest Disregard for the Law***

CBF next argues that the award should be vacated because the arbitrator acted with

"manifest disregard for the law" by ignoring settled legal principles.  (Mem. Opp'n Pl.'s Mot.

Dismiss 20.)  While the Supreme Court held in *Hall Street* that § 10 of the FAA sets out the

exclusive grounds for vacating an arbitration award, it left open the question of whether

"manifest disregard for the law" continues to constitute an acceptable ground for vacatur and

noted that some courts have thought "manifest disregard" referred to the grounds set out in § 10

collectively or was shorthand for § 10(a)(3) or § 10(a)(4).  *See Hall Street*, 552 U.S. at 585.  The

Third Circuit has yet to directly address this issue, and other circuits have split on the question.

*Bapu Corp. v. Choice Hotels Intern., Inc.*, App. No. 09-1011, 2010 WL 925985, *3 (3d Cir. Mar.

16, 2010).  In this case, the Court believes that it is reasonable to interpret CBF's claim that the

arbitrator manifestly disregarded the law as shorthand for the FAA's third ground for

vacatur—"where an arbitrator is guilty of misconduct . . . or of any other misbehavior by which

the rights of any party have been prejudiced"—and thus will reach the merit of CBF's

arguments.  9 U.S.C. § 10(a)(3).

The Third Circuit has held that an arbitration award may only be vacated in the

"'exceedingly narrow circumstances' . . .  'where an arbitration panel manifestly disregards,

rather than merely erroneously interprets, the law.'"  *Merrill Lynch, Pierce, Fenner & Smith, Inc.*

*v. Clemente*, 272 Fed. Appx. 174, 177 (3d Cir. 2008).  The movant seeking to vacate an award

for manifest disregard of the law "'bears the burden of proving that the arbitrators were fully

aware of the existence of a clearly defined governing legal principle, but refused to apply it, in effect ignoring it.'" *Black Box Corp. v. Markham*, 127 Fed. Appx. 22, 25 (3d Cir. 2005) (*quoting Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 389 (2d Cir. 2003)).  A showing that the arbitrator disregarded established legal principles would establish the sort of arbitrator misconduct for which an arbitration award can be vacated under § 10(a)(3) of the FAA.

CBF argues that the arbitrator failed to apply the "clock stops doctrine," improperly allowing Mickens to introduce a new explanation for his actions at the arbitration hearing.  CBF, however, has not established that the "clock stops doctrine" is a governing legal principle in New Jersey.  In support of its proposition, CBF cites only to two cases: one from the California Supreme Court, applying California law, and one from the District of New Jersey, applying New Jersey law.  Given the lack of precedential authority cited, the Court cannot find that the arbitrator was aware of yet refused to apply a clearly defined governing legal principle when he failed to apply the "clock stops doctrine."

CBF also argues that the arbitrator should have considered the "sham affidavit doctrine" when considering Mickens's inconsistent statements.  The Court must disagree.  The "sham affidavit doctrine" is applied by courts where a party is seeking to change prior sworn testimony to defeat a summary judgment motion.  Although Mickens's statement at the arbitration hearing was inconsistent with his statements at earlier meetings, there was no prior sworn testimony.  In addition, CBF had the ability to draw out the truth through cross-examination of Mickens during the arbitration hearing, a procedure not available when affidavits are submitted on summary judgment motions.  The "sham affidavit doctrine" is therefore inapplicable.  CBF has not established that the arbitration award should be vacated due to the arbitrator's manifest disregard

-8-

of the law, misconduct, or imperfect execution of his powers.

### C.     Award Violates Public Policy

Finally, CBF argues that the arbitration award should be vacated because it violates public policy.  (Mem. Opp'n Pl.'s Mot. Dismiss 23.)  It is unclear how this argument fits in with the FAA's statutory framework and whether this is a valid ground for vacatur following *Hall Street*.  The Court, however, need not decide this issue as CBF has failed to demonstrate that the arbitration award conflicts with an explicit public policy.  *Service Employees Int'l Union Local 36 v. City Cleaning Co., Inc.*, 982 F.2d 89, 92 (3d Cir. 1992) (arbitration award is to be vacated because it violates public policy only where "the arbitration decision and award create an explicit conflict with an explicit public policy.").  CBF cites the general public policy concerns behind litigation discovery rules as a justification for vacating the arbitration award.  Underlying CBF's public policy argument is the claim that fraudulent and improper behavior tainted the award and process, depriving CBF of a fair and equitable proceeding.  However, as discussed above, the failure to produce recordings of the Mickens's prior statements did not deprive CBF of a fair hearing.  Thus, CBF has failed to show that the arbitration award should be vacated because it violates public policy.

### C.     Modification of the Arbitration Award

In its counterclaim and cross-motion, CBF asks the Court to modify the arbitration award pursuant to § 11(a) of the FAA.  CBF argues that modification is justified based on the arbitrator's failure to take into account Mickens's duty to mitigate and his receipt of unemployment benefits.  (Mem. Opp'n Pl.'s Mot. Dismiss 25.)  Section 11(a) of the FAA provides that a Court may modify or correct an award where "there was an evident material miscalculation of figures."  9 U.S.C. § 11(a).  CBF argues that under New Jersey law, a

terminated employee is obligated to mitigate damages and that the arbitrator erred in failing to consider this in his award.  CBF further argues that, because Mickens received more than $14,000 in unemployment insurance benefits, Mickens will receive a windfall if the Court does not deduct the unemployment compensation from the back pay award.[2]

The arbitrator's decision not to reduce the back pay award for failure to mitigate or for any unemployment compensation received by Mickens does not constitute an evident material miscalculation sufficient to warrant modification.  CBF has cited no authority for the proposition that arbitrators must always consider mitigation in awarding back pay.  Other courts have held that an arbitrator's failure to consider an employee's duty to mitigate was an insufficient ground upon which to vacate or decline enforcement of an arbitration award.  *See, e.g.*, *Automobile Mechanics Local 701 v. Joe Mitchell Buick, Inc.*, 930 F.2d 576, 578 (7th Cir. 1991) (holding that arbitrators have discretion to decide whether to offset awards by interim earnings or failure to mitigate); *Tenet Healthsystem MCP, L.L.C. v. Pa. Nurses Ass'n.,* No. 01-2201, 2001 U.S. Dist. LEXIS 21535, at *12 (E.D. Pa. Dec. 20, 2001) (holding that there was no authority to support the proposition that an arbitrator is always required to consider mitigation in awarding back pay).

Given the large amount of discretion which an arbitrator holds, CBF has not shown that the failure to provide for mitigation of damages or an offset for unemployment compensation in a labor arbitration award constitutes an evident material miscalculation of figures within the meaning of Section 11 of the FAA.  Because CBF has not met its burden of proving that there are grounds upon which to vacate or modify the arbitration award, the Court will confirm the

---

[2]It is unclear to the Court if evidence of Mickens's unemployment benefits was actually presented at the arbitration hearing.  Clearly, if this evidence was not presented to the arbitrator then the arbitrator did not materially miscalculate damages by not adjusting for the unemployment benefits.

award.

**IV. Conclusion**

For the foregoing reasons, and for good cause shown,

IT IS on this 9th day of June 2010,

ORDERED that Local 701's Motion to Dismiss CBF's Counter-Claim and to Confirm the Arbitration Award [docket # 8] is GRANTED, and it is

ORDERED that CBF's Cross-Motion to Vacate or Modify the Arbitration Award [docket # 9] is DENIED, and it is

ORDERED that the arbitration award is CONFIRMED, and it is

ORDERED that this matter is CLOSED.

*/s/ Anne E. Thompson*

`

ANNE E. THOMPSON, U.S.D.J.